**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

JORDAN SOCHIA, SAVANNAH LOCE, D. L. H,
KIMBERLY BAYE, and J.B.,

                                    6:24-cv-1068 (BKS/TWD)

                            Plaintiffs,

v.

HERKIMER COUNTY CHILD PROTECTIVE
SERVICES MICHELLE CODDINGTON, MARRISA
TARRIS, ASHLEY WILLIAMS, and LAW OFFICER
SARGENT HENSEL,

                            Defendants.

_____

**Appearances:**

_Plaintiffs pro se:_
Jordan Sochia
Ilion, NY 13357

Savannah Loce
Utica, NY 13502

Kimberly L Baye
Ilion, NY 13357

_For Defendants Herkimer County Child Protective Services, Michelle Coddington, Marrisa_
_Tarris, and Ashley Williams:_
Stephen M. Groudine
Murphy Burns LLP
407 Albany Shaker Road
Loudonville, NY 12211

**Hon. Brenda K. Sannes, Chief United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I.    INTRODUCTION

Plaintiffs pro se Jordan Sochia, Savannah Loce, and Kimberly Baye, and minors, D.L.H. and J.B., bring this action under 42 U.S.C. § 1983 against Defendants Herkimer County Child Protective Services Michelle Coddington,[1] Marrisa Tarris, Ashley Williams, and Law Officer Sargent Hensel.[2] Liberally construed, Plaintiffs' complaint alleges (1) Fourteenth Amendment due process claims against Defendants Coddington, Tarris, and Williamson, (2) Fourth Amendment unlawful seizure claims against all Defendants, and (3) violations of Plaintiffs' rights to familial association under the Fourteenth Amendment against all Defendants. (Dkt. No. 1, at 5-6). Plaintiffs seek injunctive relief, as well as compensatory and punitive damages. (Dkt. Nos. 1, at 6; 4, at 4). Presently before the Court is Defendants Herkimer County Child Protective Services ("HCCPS"), Michele Coddington, Marissa Tarris, and Ashley Williamson's ("CPS Defendants") motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). (Dkt. No. 32). Plaintiffs oppose this motion. (Dkt. No. 37). Also before the Court is Plaintiffs' "Emergency Motion to Return the Child," (Dkt. No. 4, 23),[3] which the CPS Defendants oppose, (Dkt. No. 31). For the reasons that follow, the Court denies Plaintiffs'

---

[1] It is not clear whether Plaintiffs intended to name Herkimer County Child Protective Services as a defendant, or if "Herkimer County Child Protective Services Michelle Coddington" simply describes Defendant Coddington. Plaintiffs do not list Herkimer County Child Protective Services as a party in their identification of the parties, (Dkt. No. 1, at 2), and it has not been served in this case. Defense counsel for Defendants Coddington, Tarris and Williams assume that Herkimer County Child Protective Services is a named defendant, and have moved to dismiss it from this action. In an abundance of caution, the Court has addressed any claim against Herkimer County Child Protective Services.

[2] Defendants' Motion in Opposition and Motion to Dismiss indicates that Defendants' names are misspelled. (*See* Dkt. No. 31-7) (naming "Defendants . . . Michele Coddington s/h/a Michelle Coddington, Marissa Tarris s/h/a Marrisa Tarris, and Ashley Williamson s/h/a Ashley Williams[.]"). The Clerk is requested to change the names on the docket, and the Court has used the corrected names.

Defendant Hensel, who is separately represented, recently filed a motion to dismiss. (Dkt. No. 49).

[3] Plaintiffs subsequently filed an "Expedited Motion for Emergency Return of Child" on September 11, 2024, seeking the same relief requested in their original Emergency Motion. (Dkt. No. 23).

"Emergency Motion to Return the Child," and the CPS Defendants' motion to dismiss is granted in part and denied in part.

## II.    FACTS[4]

Plaintiffs' allegations arise from an investigation conducted by Herkimer County Child Protective Services ("CPS"). D.L.H. is Plaintiff Loce's two-year-old daughter, (Dkt. Nos. 1, at 2; 5, at 2), and J.B. is Plaintiff Baye's 16-year-old son, J.B., (Dkt. No. 1, at 3, 4-2, at 5). Plaintiff Sochia is D.L.H.'s legal guardian, (Dkt. No. 1, at 3), and maternal aunt, (Dkt. No. 11-3, at 3). Plaintiff Baye is D.L.H.'s maternal grandmother. (Dkt. No. 4-3, at 24).

By order of Oneida County Family Court dated October 31, 2023, Sochia and Loce had joint custody of D.L.H., with the child's primary residence to be with Loce. (Dkt. No. 4-3, at 54). On December 22, 2023, Baye took D.L.H. from Loce at a domestic violence shelter, and D.L.H. began living with Baye. (Dkt. No. 4-3, at 44). D.L.H. lived with Baye under the terms of a Safety Plan signed by Loce, Baye, and Defendant Tarris on January 22, 2024. (Dkt. No 4-3, at 41-42). On February 23, 2024, Herkimer County Department of Social Services ("HCDSS") filed a neglect petition ("February Neglect Petition") against Loce and D.L.H.'s father, requesting that D.L.H. be "placed in the temporary custody of HCDSS to reside with Kimberly Baye." (Dkt. No. 4-3, at 25). However, as indicated above, D.L.H. had already been removed and placed with Baye as of December 22, 2023. (*Id.* at 19). On March 1, 2024, Caseworkers from HCDSS signed a letter to Loce indicating that her child, D.L.H., "was recently placed in foster care." (Dkt. No.

---

[4] The facts are drawn from (1) the Complaint, (Dkt. No. 1), (2) the "Emergency Motion to Return the Child," which was filed concurrently with the Complaint, (Dkt. No. 4), and (3) supplemental exhibits filed by the pro se Plaintiffs with the request that they be attached to the Complaint or the Emergency Motion, (Dkt. Nos. 11, 18, 19, and 20). The Court assumes the truth of, and draws reasonable inferences from, the well-pleaded factual allegations, *see Lynch v. City of N.Y.*, 952 F.3d 67, 74–75 (2d Cir. 2020), but does not accept as true the legal conclusions, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

4-3, at 50). Baye indicates that she has "not done [one] hour of the foster care program," and she is still "not approved as a foster home or foster parent." (*Id.* at 13).

On June 19, 2024,[5] Baye received a call from CPS and was asked to "submit a urine test" because she had been charged with criminal possession of a controlled substance 20 years ago," a charge that Baye claims was "[f]alse." (Dkt. No. 4-2, at 3). Baye completed the test that day and "had a false positive for cocaine." (*Id.*).[6] Baye "was told over the phone that [she] needed to take [D.L.H.] and [J.B.] to a safe place as they were no longer safe w[ith] [her]." (*Id.*). Tarris "used coercive force," stating to Baye that if she did not comply with Tarris's instructions, "the children would be placed in immediate foster care." (Dkt. No. 1, at 3).

That same day, June 19, 2024, Coddington and Tarris, acting in their capacity as CPS workers, "seized J.B. from the custody of his mother and D.L.H. from the custody of her mother . . . Loce, legal guardian Sochia, and biological grandmother/foster parent . . . Baye. (*Id.*). According to Plaintiffs, Coddington and Tarris did not have a court order or a warrant for the removal of the children, and there were no "exigent circumstances justifying the removal." (*Id.*). Neither Sochia, Loce, nor Baye were "provided with a hearing, notice, or advisement of their rights prior to or following the seizure of the children. No pre-removal services or alternatives were offered by [Tarris] to prevent the need for removal." (*Id.*).

On June 20, 2024, CPS came to Baye's home "claiming there was a hotline call that [she] abuse[s] cocaine [and J.B.] pot." (Dkt. No. 4-2, at 3). CPS "demanded a drug screen," so Baye "took [J.B.] immediately" to be tested. (*Id.*). J.B. tested "negative for all substances," and CPS allowed J.B. to return home with Baye. (*Id.*). Defendants Coddington, Williamson and Tarris

---

[5] Plaintiffs' Complaint and Emergency Motion refer to the date of the removal as "On or about June 19, 2024," (Dkt. Nos. 1, at 3; 4, at 2), but all other documents filed by Plaintiffs indicate that the removal occurred on June 19, 2024. (Dkt. Nos. 4-1, at 1; 4-2, at 3; 4-3, at 3; 5, at 4). The Court will rely on the June 19, 2024 date for convenience.
[6] Baye later suggested that she smoked a "tainted joint" on June 15, 2024, to manage her pain. (Dkt. No. 28, at 3).

"informed the family court that D.L.H. was being placed with a close family member (Rosie)."
(Dkt. No. 4, at 3). However, Rosie "is not a close relative and had no prior significant
relationship with" D.L.H. (*Id.*).

On June 24, 2024, Baye filed an Order to Show Cause in Herkimer County Family Court
seeking emergency custody of D.L.H. (Dkt. No. 4-3, at 3-4). The next day, June 25, 2024, Sochia
also filed an Order to Show Cause in Family Court for custody of D.L.H. (Dkt. No. 4-3, at 16).[7]
Plaintiffs have submitted a copy of an Order to Show Cause signed and dated June 21, 2024 by a
Herkimer Family Court Judge finding that removal of D.L.H. from Baye was "necessary to avoid
imminent danger to the child and is in the best interest of the child." (Dkt. No. 4-3, at 18). The
June 21, 2024 Order directed Loce and D.L.H.'s father to show cause "why an order should not
be made" modifying the February 26, 2024 Order, which allowed the temporary removal and
placement of D.L.H. "in the temporary custody of HCDSS," by "changing the foster parent
from" Baye to Rosalinda Kasirye. (*Id.*). Plaintiffs assert that the County "alter[ed]" this Order to
Show Cause by changing the date from June 26, 2024 to June 21, 2024, "making it look like [the
County] filed before [Baye and Sochia]" filed their June 24, 2024 requests for emergency
custody. (Dkt. No. 4-3, at 3).[8] In support of their alteration assertion, Plaintiffs claim that the
County forgot to "change the neglect docket number" and forgot to change the date "on the 'duly
sworn on line.'"[9]  (Dkt. No. 4-1, at 1).

---

[7] Plaintiffs' Emergency Motion states that Baye filed on June 25, 2024, and Sochia on June 26, (Dkt. No. 4, at 5),
but later indicates that they filed on the 24th and 25th respectively, (Dkt. No. 4-3, at 3). The family court documents
filed by Plaintiffs indicate that they filed on the 24th and 25th. (Dkt. No. 4-3, at 4-17). The date is not material.
[8] A document filed by Plaintiffs indicates the County "filed for removal on July 26th, 2024, but changed that date"
to "July 21, 2024[.]" (Dkt. No. 4-3, at 3). Most other documents, including the court documents in question, refer to
June instead of July. (Dkt. Nos. 4, at 5; 4-3 at 18-19). The Court assumes any reference to July 26th and July 21st
with respect to the County's Order to Show Cause is in error.
[9] The docket number on the Order to Show Cause, is "NN-0197-24/24A, File No. 18410" and the docket number on
the supporting affidavit is "NN-00197-24." (Dkt. No. 4-3, at 18-19). In support of their alteration argument,
Plaintiffs note that the docket number for February Neglect Petition also reflects a docket number of "NN-00197-24,
Family File: 18410." (*Id.* at 22). However, Plaintiffs do not explain how having the same docket numbers shows that

Baye and Sochia were told to appear in Family Court on July 24, 2024. (Dkt. No. 4-1). Loce "already had court on July 24, 2024 to show cause on her neglect case from February." (Dkt. No. 4-3, at 3). "Plaintiffs appeared on July 24, 2024, with their attorney." (Dkt. No. 4, at 5). On August 5, 2025, Baye withdrew her petition so Sochia "could keep legal joint custody." (Dkt. No. 4, at 5). Plaintiffs filed their Complaint and "Emergency Motion to Return the Child" in this Court on August 30, 2024. (Dkt. Nos. 1, 4). At that time, the Plaintiffs had been separated from D.L.H. for over 70 days. (Dkt. No. 4, at 3).

## III.    MOTION TO DISMISS

### A.    Standard of Review

"A court faced with a motion to dismiss pursuant to both Rules 12(b)(1) and 12(b)(6) must decide the jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits and, therefore, an exercise of jurisdiction." *Mann v. N.Y. State Ct. of Appeals*, No. 21-cv-49, 2021 WL 5040236, at *3, 2021 U.S. Dist. LEXIS 209018, at *8 (N.D.N.Y. Oct. 29, 2021) (citation omitted). A motion to dismiss based on an abstention doctrine is considered a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), *City of New York v. Milhelm Attea & Bros.*, Inc., 550 F. Supp. 2d 332, 341 (E.D.N.Y. 2008), as is a motion to dismiss under the *Rooker-Feldman* doctrine, *Hylton v. J.P. Morgan Chase Bank, N.A.*, 338 F. Supp. 3d 263, 273 (S.D.N.Y. 2018). A district court resolving a motion to dismiss under Rule 12(b)(1) "must take all uncontroverted facts in the complaint . . . as true[] and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014). The Court may also "refer to evidence outside the pleadings" and "take judicial notice of documents in the public record,

---

the date of the Order to Show Cause was falsified. There does not appear to be a "duly sworn" line on either the Order to Show Cause or supporting affidavit.

including state court filings." *Krajisnik Soccer Club, Inc. v. Krajisnik Football Club, Inc.*, No. 20-cv-1140, 2021 WL 2142924, at *2, 2021 U.S. Dist. LEXIS 99456, at *5 (N.D.N.Y. May 26, 2021) (citations omitted).

To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face,'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must provide factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* (quoting *Twombly*, 550 U.S. at 555). The Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The complaint of a plaintiff proceeding pro se "must be construed liberally with 'special solicitude' and interpreted to raise the strongest claims that it suggests." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)). "Nonetheless, a pro se complaint must state a plausible claim for relief." *Id.*

**B.     Analysis**

Plaintiffs seek injunctive relief in the form of "[a]n order requiring the immediate return of D.L.H. to Jordan Sochia or, at minimum, the restoration of regular visitation for Kimberly Baye," compensatory damages "for the emotional and psychological harm caused by the unlawful seizure and prolonged separation," and punitive damages "for [Defendants'] willful and malicious conduct." (Dkt. No. 1, at 6).

Plaintiffs' "Emergency Motion to Return the Child" seeks "an order directing the immediate return of D.L.H. to the custody of her legal guardian Jordan Sochia," and in the alternative, an order granting Sochia, Loce and Baye "immediate, consistent regular visitation rights, with the goal of reuniting the family as quickly as possible." (Dkt. No. 4, at 4). Plaintiffs also request "that the Court schedule a prompt hearing to review the legality of [D.L.H.]'s removal and continued separation, and to determine the appropriate long-term custody arrangement that serves the best interests of D.L.H." (*Id.*).[10]

Defendants oppose Plaintiffs' motion for emergency relief on the grounds that the Court lacks subject matter jurisdiction. (Dkt. No. 31-7). Defendants also move to dismiss under Rules 12(b)(1) and 12(b)(6). (Dkt. No. 32). They reiterate that this Court lacks subject matter jurisdiction to hear the case, (Dkt. No. 32-1, at 5-9), and argue that (1) all claims on behalf of the minors must be dismissed, (*id.* at 4-5), (2) all claims against Herkimer County Child Protective Services must be dismissed, (*id.* at 12-13), (3) the Complaint "impermissibly relies on group pleading," (*id.* at 9-10), and (4) all claims against Supervisor Ashley Williamson must be dismissed, (*id.* at 10-12).

### 1.    Subject Matter Jurisdiction

Defendants seek dismissal of the Complaint under 12(b)(1) for lack of subject matter jurisdiction under three doctrines: *Younger* Abstention, the *Rooker-Feldman* Doctrine, and domestic relations abstention. (*Id.* at 5-9). Plaintiffs oppose dismissal. (Dkt. No. 37). The Court reviews doctrine each in turn.

---

[10] On November 8, 2024, Plaintiffs filed a letter notifying the Court that D.L.H. "has been returned to the care" of Sochia. (Dkt. No. 50, at 1). In that letter, Plaintiffs note that they "are still pursuing their claims under 42 U.S.C. § 1983" against Defendants. (*Id.*). The Emergency Motion requesting the immediate return of D.L.H. to Jordan Sochia therefore appears to be moot. (*See* Dkt. No. 4, at 4). But since the injunctive relief sought extends beyond the return of D.L.H., and because Plaintiffs have not withdrawn their Emergency Motion, the Court has considered Defendant's opposition to Plaintiffs claims for injunctive relief.

a.    ***Younger* Abstention**

The *Younger* doctrine creates "narrow" circumstances under which federal courts'
abstention from their "virtually unflagging" obligation "to hear cases within their jurisdiction" is
appropriate. *Cavanaugh v. Geballe*, 28 F.4th 428, 430, 432 (2d Cir. 2022) (quoting *Colorado
River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). The *Younger*
abstention doctrine provides that "federal courts should generally refrain from enjoining or
otherwise interfering in ongoing state proceedings." *Spargo v. N.Y. State Comm'n on Judicial
Conduct*, 351 F.3d 65, 74 (2d Cir. 2003). The doctrine applies in only three "exceptional
circumstances" involving: (1) ongoing state criminal prosecutions, (2) certain "civil enforcement
proceedings," and (3) "pending civil proceedings involving certain orders uniquely in
furtherance of the state courts' ability to perform their judicial functions." *Sprint Commc'ns, Inc.
v. Jacobs*, 571 U.S. 69, 78 (2013) (citations and internal punctuation omitted). Where one of
*Sprint*'s categories is implicated, *Younger* abstention is required. See *Cavanaugh*, 28 F.4th at
433. A state-initiated proceeding to gain custody of children allegedly abused by their parents is
a civil enforcement proceeding for the purposes of *Younger* abstention. *Sprint*, 571 U.S. at 79
(citing *Moore v. Sims*, 442 U.S. 415, 419–420 (1979)).

Before invoking *Younger*, a federal court may also "appropriately consider three
additional factors laid out" in *Middlesex County Ethics Committee v. Garden State Bar
Association*, 457 U.S. 423 (1982), which, when present, "further counsel in favor of abstention."
*Cavanaugh*, 28 F.4th at 432 (quoting *Sprint*, 571 U.S. at 81) (brackets omitted). These non-
dispositive *Middlesex* factors are whether there is (1) an "ongoing state judicial proceeding" that
(2) "implicates important state interests" and (3) "provides an adequate opportunity to raise
federal challenges." *Id.* (quoting *Sprint*, 571 U.S. at 81).

Finally, "even if *Younger's* prerequisites are satisfied, a federal court may exercise jurisdiction if the plaintiff can make a showing of 'bad faith, harassment or any other unusual circumstance that would call for equitable relief.'" *Lowell v. Vermont Dep't of Child. & Fams.*, 835 F. App'x 637, 639 (2d Cir. 2020), *as amended* (Dec. 15, 2020) (quoting *Falco v. Justices of Matrimonial Parts of Supreme Ct. of Suffolk Cnty.*, 805 F.3d 425, 427 (2d Cir. 2015)). To demonstrate bad faith, a plaintiff must show that relevant state proceeding "was initiated with and is animated by a retaliatory, harassing, or other illegitimate motive." *Diamond "D" Const. Corp. v. McGowan*, 282 F.3d 191, 199 (2d Cir. 2002). "[T]he party bringing the state action must have no reasonable expectation of obtaining a favorable outcome. *Id.* "A state proceeding that is legitimate in its purposes, but unconstitutional in its execution—even when the violations of constitutional rights are egregious—will not warrant the application of the bad faith exception." *Id.* "A plaintiff asserting bad faith prosecution as an exception to Younger abstention must allege specific facts to support an inference of bad faith." *Saunders v. Flanagan*, 62 F.Supp.2d 629, 634 (D. Conn. 1999) (citation omitted).

Here, there is an ongoing Herkimer County Family Court proceeding related to the custody of D.L.H. (Dkt. No. 31-1, at ¶ 3). That proceeding involves New York's "compelling interest in protecting the welfare of children, and Plaintiffs may raise their federal constitutional claims during the state proceedings." *See Torres v. Gaines*, 130 F. Supp. 3d 630, 636 (D. Conn. 2015) (abstaining according to *Younger* with respect to plaintiffs' claims for injunctive and declaratory relief, where plaintiffs sought to enjoin ongoing, state-initiated custody proceedings). As such, the Court lacks subject matter jurisdiction over Plaintiffs' claims insofar as they aim to challenge the ongoing Herkimer County Family Court proceedings. *See Sprint*, 571 U.S. at 79; *see also Mulqueen v. Herkimer Cnty. Child Protective Servs.*, No. 22-cv-1301, 2023 WL

4931679, at \*4, 2023 U.S. Dist. LEXIS 133719, at \*11 (N.D.N.Y. Aug. 2, 2023) ("In

challenging the results of any custody proceedings . . . plaintiffs are asking this court to intervene

in 'a matter rightfully reserved for state courts,' . . . when there is nothing apparent which would

preclude plaintiffs from appealing the decisions they challenge in state court." (quoting

*McKnight v. Middleton*, 699 F. Supp. 2d 507, 520 (E.D.N.Y. Mar. 29, 2010))), *report and*

*recommendation adopted*, No. 22-cv-1301, 2024 WL 756833, 2024 U.S. Dist. LEXIS 30961

(N.D.N.Y. Feb. 23, 2024); *Shibley v. Bixlerond*, No. 24-cv-0722, 2024 WL 3460788, at \*6, 2024

U.S. Dist. LEXIS 125740, at \*15 (N.D.N.Y. July 16, 2024) ("Courts in this circuit have found

[the *Younger*] conditions to be satisfied in matters involving issues of child custody."), *report*

*and recommendation adopted*, No. 24-cv-722, 2024 WL 4203975, 2024 U.S. Dist. LEXIS

166685 (N.D.N.Y. Sept. 16, 2024); *Walker v. O'Connor,* No. 22-cv-581, 2022 WL 2341420, at

\*6, 2022 U.S. Dist. LEXIS 114727, at \*12 (N.D.N.Y. June 29, 2022) ("[I]n the event the

underlying family court proceedings are pending, such claims are likely barred by the *Younger*

abstention doctrine."), *report and recommendation adopted*, No. 22-cv-581, 2022 WL 2805462,

2022 U.S. Dist. LEXIS 126335 (N.D.N.Y. July 18, 2022).

     Plaintiffs have alleged that the CPS Defendants falsified court documents to make it

"look like" the County filed for the removal of D.L.H. before Baye and Sochia filed for

emergency custody. (Dkt. No. 4-3, at 3).[11] Plaintiffs allege that Coddington and Tarris acted

"without a court order, warrant, or any exigent circumstances justifying the removal," (Dkt. No.

---

[11] Plaintiffs appear to allege that the County changed the date of its Order to Show Cause from June 26 to June 21, 2024, but forgot to change that on the "duly sworn" line. (Dkt. No. 4-3, at 3). The Order to Show Cause for the most recent removal is dated July 21, 2024, and indicates that service is required "on or before the 26th day of June, 2024." (*Id.* at 18). The HCDSS Affidavit filed in support of the Order to Show Cause is also dated June 21st, 2024. (*Id.* at 19). There is an arrow drawn beside the signature date on the Order to Show Cause that indicates "Dates switched to look as though they filed before we did." (*Id.* at 18). However, neither document contains a "duly sworn" line. (*See id.* at 18-19).

1, at 3). Plaintiffs also allege that Tarris "falsely represented to family court that the child was placed with a close family member." (Dkt. No. 1, at 3). These allegations are insufficient to satisfy the bad faith exception under *Younger*. Plaintiffs have not alleged that the CPS Defendants initiated the court-ordered removal of D.L.H. with a retaliatory, harassing, or other illegitimate motive, or that there was no reasonable expectation that the CPS Defendants might obtain a favorable outcome, or any facts to support such a claim. *See id.* Therefore, the bad faith exception to *Younger* does not apply, and the Court must abstain with respect to Plaintiffs' claims seeking injunctive relief.

While *Younger* abstention bars Plaintiffs' claims for injunctive relief, the doctrine does not necessarily bar claims for monetary damages. *See Kirschner v. Klemons*, 225 F.3d 227, 238 (2d Cir. 2000) ("[W]e have held that abstention and dismissal are inappropriate when damages are sought, even when a pending state proceeding raises identical issues and we would dismiss otherwise identical claims for declaratory and injunctive relief, but that a stay of the action pending resolution of the state proceeding may be appropriate."); *see also McNeil v. HCDSS*, No. 18-cv-0631, 2018 WL 6173983, at *4, 2018 U.S. Dist. LEXIS 140881, at *9 (N.D.N.Y. Aug. 17, 2018) (declining to abstain under *Younger* with respect to money damages), *report and recommendation adopted sub nom. McNeil v. Riente*, 2018 WL 4895848, 2018 U.S. Dist. LEXIS 173174 (N.D.N.Y. Oct. 9, 2018). In addition, the Second Circuit has reversed at least one district court for invoking *Younger* in "a suit for money damages—and money damages only—based on alleged conduct that occurred in the past," because "[t]here appears to be little chance that a potential award of money damages would interfere with or disrupt the permanency proceedings that are ongoing in . . . Family Court[.]" *Jones v. Cnty. of Westchester*, 678 F. App'x 48, 50 (2d Cir. 2017) ("That the permanency proceedings may involve some of the same subject matter as

this suit, such as [the child's] treatment and care while in the custody of the . . . County Department of Social Services, presents no bar to the district court's adjudication of the claims.").[12] Accordingly, the Court will continue its analysis of the remaining abstention doctrines.

### b.    Rooker-Feldman Doctrine

The *Rooker-Feldman* doctrine bars federal claims "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Green v. Mattingly*, 585 F.3d 97, 101 (2d Cir. 2009) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)); *see also Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 84 (2d Cir. 2005). There are four "requirements" that must be satisfied before *Rooker-Feldman* applies: (1) the "federal-court plaintiff must have lost in state court," (2) the plaintiff "must complain of injuries caused by a state-court judgment," (3) the plaintiff "must invite district court review and rejection of that judgment," and (4) the state-court judgment "must have been rendered before the district court proceedings commenced." *Green*, 585 F.3d at 101 (citing *Hoblock*, 422 F.3d at 85) (internal quotation marks and brackets omitted). The underlying principle of the *Rooker-Feldman* doctrine is that "within the federal judicial system, only the Supreme Court may review state-court decisions." *Hoblock*, 422 F.3d at 85. Where allegations of

---

[12] When a court does not invoke *Younger* abstention in a case involving ongoing state proceedings, a "stay of the action pending resolution of the state proceeding may be appropriate." *See Kirschner*, 225 F.3d at 238; *Torres*, 130 F. Supp. 3d at 637 (finding the application of *Younger* appropriate to stay the action where "the resolution of the claims for monetary damages" would place "the Court in the awkward position of having to question the validity of the underlying state proceedings"). But where plaintiffs "plainly fail" to state a claim for damages, a court may nonetheless decline to stay the action. *Bukowski v. Spinner*, 709 F. App'x 87, 88 (2d Cir. 2018); *see also Lewis v. Legal Servicing, LLC*, No. 19-cv-8085, 2022 WL 2531817, at *6 n.11, 2022 U.S. Dist. LEXIS 125278, at *18 n.11 (S.D.N.Y. Mar. 15, 2022) ("Though a court may stay claims for monetary damages pending resolution of the state action, that is unnecessary since Plaintiff's claims 'plainly fail' for failure to state a claim."), *report and recommendation adopted sub nom. Lewis v. Steward*, No. 19-cv-8085, 2022 WL 4592641, 2022 U.S. Dist. LEXIS 179319 (S.D.N.Y. Sept. 30, 2022).

fraud invite "the federal court to review the state proceedings and determine that the . . .

judgment was issued in error," a claim is barred to the extent that the relief sought "voids" the

state judgment. *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 427 (2d Cir. 2014).

But a claim seeking damages for injuries resulting from such alleged fraud that "does not

require the federal court to sit in review of the state court judgment" is not barred by the *Rooker-

Feldman* doctrine. *See id.* at 427–28. Additionally, in a child custody context, a plaintiff's

"constitutional claims based *solely* on whether sufficiently exigent circumstances existed to

justify an *emergency* removal are not barred by the *Rooker–Feldman* doctrine." *Schweitzer v.

Crofton*, 935 F. Supp. 2d 527, 544 (E.D.N.Y. 2013), *aff'd*, 560 F. App'x 6 (2d Cir. 2014).

Here, as discussed above, there is an ongoing Herkimer County Family Court proceeding

related to Plaintiffs' claims. (Dkt. No. 31-1, at ¶ 3). Defendants indicate that there is a

permanency hearing scheduled for October 3, 2024, and a trial to determine whether Loce

neglected D.L.H. is scheduled for November 6, 2024. (*Id.* at ¶ 19). The custody case with respect

to D.L.H. is ongoing, and there has been no final judgment; Plaintiffs have not "lost" in state

court.[13]

Moreover, Plaintiffs' allegations largely stem from the removal of D.L.H. and J.B.

*without* a court order on June 19, 2024. And while a Herkimer County Family Court judge later

signed an Order to Show Cause approving the emergency removal of D.L.H. on June 21, 2024,

(Dkt. No. 4-3, at 18), it does not appear on the record before the Court that there was *ever* a court

order for the removal of J.B. Where the only issue before the court is the emergency removal of a

child, prior to state court involvement, *Rooker-Feldman* does not apply. *See Hunter v. McMahon*,

75 F.4th 62, 71 (2d Cir. 2023) (reversing district court for applying *Rooker-Feldman* to dismiss

---

[13] Plaintiffs informed the Court that D.L.H. has been returned to the care of Sochia, (Dkt. No. 50, at 1), but did not explain whether this is the result of a final judgment or another interim placement.

plaintiff's federal claims for lack of subject matter jurisdiction; state proceedings had not ended and *Rooker-Feldman* would not have barred plaintiff's claims based on defendant's conduct *prior* to state court judgement) ("Our court has further determined that *Rooker-Feldman* does not bar claims based on an opponent's misconduct that *precedes* the state court proceeding, if the plaintiffs' alleged injuries were merely *ratified* by the state-court judgments rather than *caused* by them." (quoting *Dorce v. City of New York*, 2 F.4th 82, 104 (2d Cir. 2021) (internal alterations omitted))); *Schweitzer v. Crofton*, 560 F. App'x 6, 9 (2d Cir. 2014) ("[Plaintiffs] challenge only the emergency removal of [the child] . . . That removal preceded any state court involvement. Accordingly, the *Rooker–Feldman* doctrine has no bearing here.").

Thus, to the extent the Complaint alleges damages arising out of the emergency removal of D.L.H. and J.B., prior to any order of any state court, such claims are not barred by *Rooker-Feldman*.

### c.    Domestic Relations Abstention

"The whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the states, and not to the laws of the United States." *Deem v. DiMella-Deem*, 941 F.3d 618, 624 (2d Cir. 2019) (quoting *In re Burrus*, 136 U.S. 586, 593–94 (1890)). "When a case calls for a federal court to interpret state domestic relations law or 'immerse itself in domestic relations matters,' the court must abstain from proceeding with the case due to the state courts' 'greater interest and expertise' in that field." *Evans v. Adams*, 714 F. Supp. 3d 119, 124 (E.D.N.Y. 2024) (quoting *American Airlines, Inc. v. Block*, 905 F.2d 12, 14 (2d Cir. 1990)).

"Federal courts do have jurisdiction to decide tort, contract or civil rights questions in cases arising out of a domestic relations context when the underlying domestic relations issues are not in dispute." *McArthur v. Bell*, 788 F. Supp. 706, 708 (E.D.N.Y. 1992). Nevertheless,

abstention may be appropriate where the adjudication of a plaintiff's claim would require a court to "re-examine and re-interpret all the evidence brought before the state court in the domestic relations proceedings." *Id.* at 709; *see also Schottel v. Kutyba*, No. 06-cv-1577, 2009 WL 230106, at *1, 2009 U.S. App. LEXIS 1916, at *4 (2d Cir. Feb. 2, 2009) ("Although we recognize that the domestic relations exception is very narrow, … a plaintiff cannot obtain federal jurisdiction merely by rewriting a domestic dispute as a tort claim for monetary damages." (internal quotations omitted)); *Hunter v. McMahon*, No. 20-cv-18, 2024 WL 4362310, at *8, 2024 U.S. Dist. LEXIS 178248, at *19 (W.D.N.Y. Sept. 30, 2024) ("Regardless of how [the plaintiff] frames or labels these claims, they arose in the context of a child custody proceeding in state court, and therefore this Court must abstain from exercising jurisdiction over them.").

But courts are not required to abstain where the primary issue is not "the state's adjudication of the domestic dispute." *See Cegalis v. Trauma Inst.*, No. 19-cv-00153, 2021 WL 825405, at *4, 2021 U.S. Dist. LEXIS 42096, at *13-14 (D. Vt. Mar. 4, 2021) ("In this case Plaintiff does not take issue with the state's adjudication of the domestic dispute. Though Defendants do not specifically analyze any of the claims, the abuse of process claim appears to be the most at issue . . . This Court finds that the abuse of process claim does not fall under the narrow domestic relations exception where Plaintiff has not asked to change the *results* of the child custody proceedings.").

Here, there has been no final custody determination. And while Plaintiffs clearly take issue with the adjudication of the custody dispute involving D.L.H., their Complaint broadly alleges violations stemming from the temporary removal of D.L.H. and J.B. prior to the issuance of any court order. These claims are cognizable in federal court. *See id.* (declining to abstain

under domestic relations doctrine where plaintiff's abuse of process claim did not seek to change the results of child custody proceedings); *Mulqueen*, 2023 WL 4931679, at *4, 2023 U.S. Dist. LEXIS 133719, at *12-13 (declining to abstain under domestic relations doctrine with respect to plaintiffs' monetary damage claims, but noting "the domestic relations abstention doctrine may bar plaintiff's claims for damages, to the extent those claims challenge the results of custody proceedings in family court, so long as there was no obstacle to the full and fair determination of the custody issue in the state court").

### 2. Claims on behalf of D.L.H. and J.B.

Defendants assert that, because D.L.H. and J.B. are minors and are unrepresented by counsel, all claims asserted on their behalf by the remaining Plaintiffs must be dismissed. (Dkt. No. 32-1, at 4-5). On October 21, 2024, Magistrate Judge Therese Wiley Dancks issued a Text Order informing Plaintiffs that "each pro se plaintiff may only represent themselves and not any other person including a minor. Parents may assert claims for minors, but only through a licensed attorney admitted to practice before this Court." (Dkt. No. 40) (citing *Cheung v. Youth Orchestra Foundation of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990); *Berrios v. N.Y.C. Housing Auth.*, 564 F.3d 130, 134 (2d Cir. 2009)). Judge Dancks instructed Plaintiffs that if they could not find a licensed attorney to appear on behalf of D.L.H. and J.B. within 30 days, their claims would be dismissed without prejudice. (*Id.*). On October 28, 2024, Plaintiffs Baye, Sochia and Loce filed a "Motion to Voluntarily Dismiss Claims of Minor Plaintiffs Without Prejudice." (Dkt. No. 43-2). In that motion, Plaintiffs request this Court dismiss the claims of D.L.H. and J.B. without prejudice. (*Id.* at 2). Accordingly, the Court dismisses all claims brought on behalf of D.L.H. and J.B. without prejudice.

### 3.    Municipal Liability

It is not clear from the Complaint whether Plaintiffs intended to sue HCCPS, or only its employees. *Compare* (Dkt No. 1, at 1) (naming as Defendants "Herkimer County Child Protective Services Michelle Coddington, Marrisa Tarris, Ashley Williams and Law Officer Sargent Hensel"), *with* (Dkt. No. 1-1) (naming as Defendants "Michelle Coddington, Marrisa Tarris, Ashley Williams and Office [sic] Hensel"). In any event, no viable claim would lie against HCCPS; "under New York law, departments that are merely administrative arms of a municipality have no separate legal identity apart from the municipality and therefore cannot be sued." *Mulvihill v. New York*, 956 F. Supp. 2d 425, 427 (W.D.N.Y. 2013) (quoting *Omnipoint Comm'ns, Inc. v. Town of LaGrange*, 658 F. Supp. 2d 539, 552 (S.D.N.Y. 2009) (internal alterations omitted).

The CPS Defendants urge the Court to dismiss the Complaint as to HCCPS because it is a non-suable entity. (Dkt. No. 32-1, at 12). Defendants also argue that the claims against HCCPS should be dismissed even "[a]ssuming] the plaintiffs meant to sue the County," because Plaintiffs have "not alleged any formal policy, widespread practice, or failure to provide adequate training" as would be necessary to state a claim against a municipality. (*Id.* at 12). Plaintiffs disagree, and in the alternative, "request leave to amend the Complaint to include additional evidence supporting the *Monell* claim." (Dkt. No. 37, at 18).

A municipality "may not be sued under § 1983 for an injury inflicted solely by its employees or agents," and is liable only when it actually deprives, through the execution of its policies, an individual of his constitutional rights. *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978). To prevail on a municipal liability claim, a plaintiff must show "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation."

*Outlaw v. City of Hartford*, 884 F.3d 351, 373 (2d Cir. 2018) (quoting *City of Canton*, 489 U.S. at 385). A municipal policy or custom may be established where the facts show: (1) a formal policy, officially promulgated by the municipality, *Monell*, 436 U.S. at 690; (2) action taken by the official responsible for establishing policy with respect to a particular issue, *Pembaur v. Cincinnati*, 475 U.S. 469, 483–84 (1986); (3) unlawful practices by subordinate officials so permanent and widespread as to practically have the force of law, *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127–30 (1988); or (4) a failure to train or supervise that amounts to "deliberate indifference" to the rights of those with whom the municipality's employees interact, *City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *see also Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007).

To demonstrate "deliberate indifference" under the failure to supervise or discipline theory, a plaintiff must show that "the need for more or better supervision to protect against constitutional violations was obvious." *Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995). "An obvious need may be demonstrated through proof of repeated complaints of civil rights violations; deliberate indifference may be inferred if the complaints are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents." *Id.*

Plaintiffs do not refer to Herkimer County Child Protective Services, HCDSS, or Herkimer County with any specificity in their Complaint or in their Emergency Motion. Plaintiffs do not allege a formal policy or action taken by an official responsible for establishing policy that caused their constitutional harms. *See Pembaur*, 475 U.S. 469, 483–84. Nor do Plaintiffs allege any unlawful practices by subordinate officials so permanent and widespread as to practically have the force of law. *See City of St. Louis*, 485 U.S. at 127–30; *see also City of*

19

*Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."). And while Plaintiffs allege that Williamson is sued for "failure to provide adequate oversight and for contributing to the unconstitutional actions carried out by her subordinates," (Dkt. No. 1, at 4), this conclusory allegation, without any factual detail, fails to demonstrate "deliberate indifference" and fails to state a claim under the failure to supervise theory. Having failed to identify "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation," *see Outlaw*, 884 F.3d at 373, the Plaintiffs have failed to state a claim for municipal liability. Accordingly, to the extent Plaintiffs sought to bring a municipal liability claim, it is dismissed with leave to amend.

### 4.    Personal Involvement

The CPS Defendants urge the Court to dismiss all claims against Williamson because Plaintiffs have failed to plausibly "allege any personal involvement of [Williamson] in the alleged constitutional violations beyond the conclusory allegations of 'participat[ion].'" (Dkt. No. 32-1, at 10-12). Plaintiff replies that the Complaint pleads facts "sufficient to establish personal involvement under *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)." (Dkt. No. 37, at 18).

*Colon* is no longer the controlling authority in the Second Circuit with respect to supervisory liability. *See Tangreti v. Bachmann*, 983 F.3d 609, 618-19 (2d Cir. 2020). "[S]upervisory officials may not be held liable merely because they held a position of authority." *Mulqueen*, 2023 WL 4931679, at *5, 2023 U.S. Dist. LEXIS 133719, at *13. Regardless of a defendant's status as a supervisor, "a plaintiff must plead and prove 'that each Government-

official defendant, through the official's own individual actions, has violated the Constitution.'" *Tangreti*, 983 F.3d at 618 (quoting *Iqbal*, 556 U.S. at 676). "The supervisor must have committed the violation [them]self, not by the supervision of others who committed the violation." *Mulqueen*, 2023 WL 4931679, at *5, 2023 U.S. Dist. LEXIS 133719, at *15.

Here, Plaintiffs have alleged that Williamson was "directly involved in the removal" of the minor children. (Dkt. No. 1, at 4). They claim that Williamson "participated" in "the unlawful actions taken by" Tarris and Coddington. (*Id.*). In their "Emergency Motion to Return the Child," Plaintiffs allege that Williamson (among other Defendants) "denied" Sochia's attempts "to retrieve the child[.]" (Dkt. No. 4, at 2). Mindful of Plaintiffs' status as pro se litigants, the Court finds that these claims are sufficient to plausibly allege that Williamson committed certain violations herself, and was therefore personally involved. *See Mulqueen*, 2023 WL 4931679, at *5, 2023 U.S. Dist. LEXIS 133719, at *15. Thus, the Court declines to dismiss the claims against Defendant Williamson.

The CPS Defendants also suggest that the Complaint "relies excessively and impermissibly on 'group pleading,'" and that it is not sufficient to provide Defendants "with notice of what unlawful conduct they are claimed to have engaged in[.]" (Dkt. No. 32-1, at 9-10). Defendants assert that, as such, the Complaint "does not plausibly allege individual participation." (*Id.* at 9). Plaintiffs disagree. (Dkt. No. 37, at 16).

Preliminarily, the Court notes that "nothing in Rule 8 prohibits collectively referring to multiple defendants where the complaint alerts defendants that identical claims are asserted against each defendant." *Liu Jo S.P.A. v. Jenner*, 630 F. Supp. 3d 501, 521 (S.D.N.Y. 2022) (quoting *Vantone Grp. Limited Liab. Co. v. Yangpu NGT Indus. Co.*, No. 13-cv-7639, 2015 WL 4040882, at *4, 2015 U.S. Dist. LEXIS 86653, at *14 (S.D.N.Y. July 2, 2015)). Rule 8(a)

requires that "adequate notice is given," and "fair notice" is "that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so that it may be assigned the proper form of trial." *Id.* (quoting *Wynder v. McMahon*, 360 F.3d 73, 79 (2d Cir. 2004)). Here, again considering Plaintiffs' status as pro se litigants, the Court finds that these claims are sufficient to provide notice to Williamson.[14]

### C.    Leave to Amend

Under Federal Rule of Civil Procedure 15(a)(2) a court should freely give leave to amend "when justice so requires." *See McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). Under Rule 15(a), absent certain circumstances not at play here, a party may amend its pleading only with the opposing party's written consent or the court's leave. See Fed. R. Civ. P. 15(a)(1)–(2). A court may, in its discretion, deny leave to amend "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *MSP Recovery Claims, Series LLC v. Hereford Ins. Co.*, 66 F.4th 77, 90 (2d Cir. 2023).

Here, the Court does not have jurisdiction over the ongoing custody proceedings involving D.L.H., and any attempt to amend the Complaint to salvage Plaintiffs' requests for injunctive or equitable relief would be futile. Accordingly, the Court will not permit Plaintiff leave to amend on their claims for injunctive relief. But in recognition of their status as pro se litigants, and because it is possible that they may be able to assert cognizable claims with better pleading, the Court grants Plaintiffs leave to file an amended complaint within thirty (30) days of the date of this Order with respect to their *Monell* claim against Herkimer County.

In any amended complaint, Plaintiffs must clearly set forth the facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts, and each individual

---

[14] Neither party has briefed the viability of Plaintiffs' substantive and procedural due process claims, and the Court does not therefore address those claims.

who committed each alleged wrongful act. In addition, the revised pleading should allege facts demonstrating the specific involvement of any of the named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). Any such amended complaint will replace the existing complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." (internal quotation marks omitted)). Any exhibits that Plaintiffs wish the Court to consider going forward must be attached to the Amended Complaint. This means that their previous complaint and other filings will no longer be the operative documents containing their pleadings and exhibits—everything that is essential must be contained in or attached to the Amended Complaint.

## IV.    MOTION FOR PRELIMINARY INJUNCTION (EMERGENCY RELIEF)

As explained above, the Court must abstain under *Younger* with respect to Plaintiffs' request for injunctive relief. In light of the dismissal of Plaintiff's claims for injunctive relief, Plaintiffs' motion for emergency relief (Dkt. No. 4) is denied as moot.

## V.    CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendant's motion to dismiss (Dkt. No. 32) is GRANTED as to claims brought on behalf of D.L.H. and J.B., without prejudice; and it is further

**ORDERED** that Defendant's motion to dismiss (Dkt. No. 32) is GRANTED as to Plaintiffs' claims for injunctive or equitable relief and these claims are dismissed under the *Younger* abstention doctrine, without leave to amend; and it is further

**ORDERED** that Defendants' motion to dismiss (Dkt. No. 32) is otherwise DENIED in its entirety; and it is further

**ORDERED** that Plaintiffs' "Emergency Motion to Return the Child" (Dkt. No. 4, 23) is DENIED; and it is further

**ORDERED** that any amended complaint must be filed within thirty (30) days of the date of this Order; and it is further

**ORDERED** that if Plaintiff does not file an amended complaint within thirty (30) days, Defendant is directed to file an answer to the complaint in accordance with the Federal Rules of Civil Procedure.

**IT IS SO ORDERED.**

Dated: <u>November 15, 2024</u>
          Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge