**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

JORDAN SOCHIA, SAVANNAH LOCE, and
KIMBERLY BAYE,

                                                    6:24-cv-1068 (BKS/TWD)

                              Plaintiffs,

v.

HERKIMER COUNTY CHILD PROTECTIVE
SERVICES, MICHELE CODDINGTON, MARISSA
TARRIS, ASHLEY WILLIAMSON, and SARGENT
HENSEL,

                              Defendants.

**Appearances:**

*Plaintiffs pro se:*
Jordan Sochia
Ilion, NY 13357

Savannah Loce
Ilion, NY 13502

Kimberly L Baye
Ilion, NY 13357

*For Defendants Herkimer County Child Protective Services, Michele Coddington, Marissa
Tarris, and Ashley Williamson:*
Stephen M. Groudine
Murphy Burns Groudine LLP
407 Albany Shaker Road
Loudonville, NY 12211

*For Defendant Sergeant Hensel:*
Cory John Schoonmaker
Sugarman Law Firm LLP
211 West Jefferson Street
Syracuse, NY 13202

**Hon. Brenda K. Sannes, Chief United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.    INTRODUCTION

Plaintiffs pro se Jordan Sochia, Savannah Loce, and Kimberly Baye bring this action under 42 U.S.C. § 1983 against Defendants Herkimer County Child Protective Services, Michele Coddington, Marissa Tarris, Ashley Williamson, and Sergeant Anthony Hensel.[1] In the operative First Amended Complaint, Plaintiffs allege that Defendants' removal of two minors violated their Fourteenth Amendment substantive and procedural due process rights, as well as their Fourteenth Amendment right to familial association. (Dkt. No. 53, at ¶¶ 25-27).[2] Plaintiffs allege that Sergeant Hensel violated the Plaintiffs' Fourteenth Amendment rights by "fail[ing] to enforce a valid family court order." (*Id.* ¶ 28). Plaintiffs seek compensatory and punitive damages. (*Id.* at 7). Presently before the Court is Defendants Herkimer County Child Protective Services ("HCCPS"), Michele Coddington, Marissa Tarris, and Ashley Williamson's (collectively, the "CPS Defendants") motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 55). The motion is fully briefed. (Dkt. Nos. 55-3, 61-1, 64-1). Also before the Court is Defendant Hensel's motion to dismiss pursuant to Rule 12(b)(6). (Dkt. No. 62). That motion is also fully briefed. (Dkt. Nos. 62-2, 66, 68). Finally, Plaintiffs have filed a cross-motion for leave to file a second amended complaint, (Dkt. No. 61), which the CPS Defendants oppose, (Dkt. No. 64-1, at 6-7). For the reasons that follow, the CPS Defendants'

---

[1] Plaintiffs have sued Defendant Hensel as "Sargent Hensel." (Dkt. No. 53). The Clerk is requested to change the name on the docket to his full name and the corrected spelling.

[2] The Court assumes familiarity with its Memorandum-Decision and Order entered on November 15, 2024 granting in part Defendants' motion to dismiss Plaintiff's original complaint. (Dkt. No. 52 ("November 2024 Order")). *Sochia v. Herkimer Cty. Child Protective Servs.*, No. 24-cv-1068, 2024 WL 4802839, 2024 U.S. Dist. LEXIS 208364 (N.D.N.Y. Nov. 15, 2024).

motion to dismiss is granted in part and denied in part, Defendant Hensel's motion to dismiss is granted, and Plaintiffs' motion for leave to file a second amended complaint is denied.

## II.      BACKGROUND

### A.      Materials Outside the First Amended Complaint

On November 19, 2024, Plaintiffs filed the First Amended Complaint. (Dkt. No. 53). Plaintiffs were specifically instructed in the November 2024 Order that any amended complaint would "replace the existing complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court." (Dkt. No. 52, at 23). Moreover, the Court advised Plaintiffs that "[a]ny exhibits that Plaintiffs wish the Court to consider going forward must be attached to the First Amended Complaint. This means that their previous complaint and other filings will no longer be the operative documents containing their pleadings and exhibits—everything that is essential must be contained in or attached to the Amended Complaint." *Id.* Despite the Court's instructions, after filing their First Amended Complaint, Plaintiffs continued to separately file supporting documents. (*See, e.g.,* Dkt. Nos. 63, 83, 84, 85).

"[A]ll litigants, including pro ses, have an obligation to comply with court orders." *Shukla v. Deloitte Consulting LLP*, No. 19-cv-10578, 2021 WL 2418841, at *5, 2021 U.S. Dist. LEXIS 111057, at *14 (S.D.N.Y. June 14, 2021) (quoting *McDonald v. Head Criminal Court Supervisor Officer*, 850 F.2d 121, 124 (2d Cir. 1988)). "While a pro se plaintiff may not be aware of rules and obligations in the first instance, if a pro se plaintiff is clearly warned of those rules and obligations and still fails to follow them, 'they, like all litigants, must suffer the consequences of their actions.'" *Id.* Because Plaintiffs have failed to follow the Court's instructions, the Court will construe only the First Amended Complaint, (Dkt. No. 53), as the operative complaint for the purposes of the pending motions to dismiss. The Court will also take

judicial notice of public documents or documents of public record, whether filed by Plaintiffs or Defendants.

**B.    Facts[3]**

This action revolves around the physical and legal custody of two minors: two-year old D.L.H. and sixteen-year-old J.B. Loce is D.L.H.'s biological mother, Sochia is D.L.H.'s maternal aunt and legal guardian, and Baye is D.L.H.'s biological grandmother and "former foster caregiver," as well as J.B.'s biological mother. (Dkt. No. 53, ¶¶ 5-7, 16).

Court filings submitted in this case, of which this Court takes judicial notice, indicate that as of October 31, 2023, Loce (mother) and Sochia (aunt) shared ongoing "joint custody" of D.L.H. with visitation as arranged between the parties. (Dkt. No. 4-3, at 54-55 (Oneida County Family Court Order of Custody, dated October 31, 2023)).  The CPS Defendants have filed a Herkimer County Court "Order on Application for Temporary Removal of Child," dated March 3, 2024, that placed D.L.H. "in the temporary custody of the Commissioner of Social Services of Herkimer County[,] to reside with" Plaintiff Baye. (Dkt. No. 55-2, at 2-5).

Plaintiffs allege that "[o]n or about June 19, 2024," Marisa Tarris, a caseworker employed by HCCPS and "under the oversight of [HCCPS] supervisors" Michele Coddington and Ashley Williamson, "removed D.L.H. and J.B. from their family home without a court order, warrant, or exigent circumstances." (Dkt. No. 53, ¶ 11). Plaintiffs allege that Defendant Tarris "used coercion to demand that Kimberly Baye relinquish both children, falsely claiming that failure to comply would result in immediate placement in foster care." (*Id.* ¶ 13). In an Order to

---

[3] The facts are drawn from Plaintiffs' First Amended Complaint, (Dkt. No. 53), and the family court orders which the Court has taken judicial notice of. *See Simeone v. T. Marzetti Co.*, No. 21-cv-9111, 2023 WL 2665444, at *1, 2023 U.S. Dist. LEXIS 53148, at *3 (S.D.N.Y. Mar. 28, 2023) ("Courts may take judicial notice of public documents or documents of public record" (quoting *Casey v. Odwalla, Inc.*, 338 F. Supp. 3d 284, 294 (S.D.N.Y. 2018))).The Court assumes the truth of, and draws reasonable inferences from, the well-pleaded factual allegations. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).

Show Cause issued June 21, 2024, in reliance on a Herkimer County Department of Social Services ("HCDSS") affidavit, the Herkimer County Family Court continued D.L.H.'s "temporary custody with HCDSS" but changed D.L.H.'s residence from Baye to a foster parent. (Dkt. No. 55-2, at 6).[4] The order directed Loce's appearance before the court on July 24, 2024 for a hearing on D.L.H.'s removal. (*Id.*).

JB was returned to Plaintiffs' custody "two days" after removal—"June 21, 2024[.]" (Dkt. No. 53, ¶ 14). However, D.L.H. "remained in foster care for over four months[.]" (*Id.* ¶ 15). Plaintiffs claim that "[o]n multiple occasions," they "requested the assistance of [Sergeant Hensel] in enforcing a valid court order that restored joint custody of D.L.H. to her legal guardian, Jordan Sochia, issued by the family court." (*Id.* ¶ 16). Plaintiffs assert Defendant Tarris told Sergeant Hensel "that Jordan Sochia use [sic] to have joint custody with her sister Savanah [sic] Loce when in in fact the custody order was standing and current." (*Id.*). Plaintiffs allege that Sergeant Hensel "failed to act or intervene," allowing CPS to continue holding D.L.H. in foster care" in violation of their Fourteenth Amendment rights. (*Id.* ¶ 17). Plaintiffs "were not provided with any pre-removal notice, hearing, or advisement of their rights," and "[n]o preventative services were offered to mitigate the alleged concerns[.]" (*Id.* ¶¶ 19, 20).

## III. MOTION TO DISMISS

### A. Standard of Review

To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face,'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must provide factual allegations

---

[4] The June 21, 2024 affidavit filed by HCDSS seeks a change in D.L.H.'s placement "due to a positive drug screen." (Dkt. No. 4-3, at 19).

sufficient "to raise a right to relief above the speculative level." *Id.* (quoting *Twombly*, 550 U.S. at 555). The Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

The complaint of a plaintiff proceeding pro se "must be construed liberally with 'special solicitude' and interpreted to raise the strongest claims that it suggests." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)). "Nonetheless, a pro se complaint must state a plausible claim for relief." *Id.*

### B.    CPS Defendants

The CPS Defendants move to dismiss Plaintiffs' Fourteenth Amendment substantive and procedural due process claims. (Dkt. No. 55-3, at 2-8). The CPS Defendants also ask the Court to dismiss all claims against Defendants Coddington, Williamson, and HCCPS. (*Id.* at 9-11). Plaintiffs oppose dismissal. (Dkt. No. 61-1). The Court reviews each argument in turn.

### 1.    Claims against Coddington and Williamson

First, the CPS Defendants seek dismissal of all claims against Defendants Coddington and Williamson on the ground that the First Amended Complaint "does not allege any individual participation by Coddington of [sic] Williamson beyond the mere supervision of others who allegedly committed a violation[.]" (Dkt. No. 55-3, at 10). The legal standard governing personal involvement for claims under 42 U.S.C. § 1983 was discussed at length in the November 2024 Order and will not be restated here. (Dkt. No. 52, at 20-21).

The First Amended Complaint alleges only that Defendants Coddington and Williamson, "as supervisors, were fully aware of the removal of D.L.H. and J.B. and failed to intervene, despite knowing the actions were unlawful and unjustified." (Dkt. No. 53, ¶ 21). Plaintiffs assert, in a conclusory manner, that these Defendants' "failure to exercise appropriate supervisory control or correct the actions of their subordinates directly contributed to the violations of the [P]laintiffs' constitutional rights." (*Id.* ¶ 22). These bald assertions are insufficient to hold Coddington and Williamson personally liable. *See K.D. ex rel. Duncan v. White Plains Sch. Dist.*, 921 F. Supp. 2d 197, 206 (S.D.N.Y. 2013) ("[A]n allegation that a supervisory official merely failed to exercise his or her authority over subordinates, without more, is insufficient to hold a defendant personally liable under § 1983 on a failure-to-intercede theory, [ ] or on a theory of supervisory liability."). Therefore, Defendants' motion to dismiss all claims against Defendants Coddington and Williamson is granted.[5]

### 2.    Claims against HCCPS

The CPS Defendants also move to dismiss all claims as alleged against the Herkimer County Child Protective Services. (Dkt. No. 55-3, at 10). In the November 2024 Order, the Court informed Plaintiffs that no viable claim would lie against HCCPS, because "under New York law, departments that are merely administrative arms of a municipality have no separate legal identity apart from the municipality and therefore cannot be sued." (Dkt. No. 52, at 18 (quoting *Mulvihill v. New York*, 956 F. Supp. 2d 425, 427 (W.D.N.Y. 2013))). However, Plaintiffs argue that they "properly intend to sue the County of Herkimer, as Herkimer County CPS is a subdivision[.]" (Dkt. No. 61-1, at 6). Because Plaintiffs' response makes it clear that they properly intend to assert a claim against the County, and given their pro se status, the Court will

---

[5] To the extent Plaintiffs uncover evidence of the personal involvement of Coddington or Williamson in discovery, they may seek leave to amend to add them as defendants.

construe the Complaint as one against Herkimer County. *See Crum v. Dodrill*, 562 F. Supp. 2d

366, 373–74 (N.D.N.Y. 2008) ("[T]he mandate to read the papers of pro se litigants generously

makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to

dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that

those factual assertions are consistent with the allegations of the plaintiff's complaint.");

*Friedman v. New York City Admin. for Children's Servs.*, 502 F. App'x 23, 27 n.3 (2d Cir. 2012)

("Even though Mr. Friedman brought claims against ACS, City agencies are not suable entities,

and thus, the proper defendant is the City of New York. We refer to ACS instead of the City of

New York for convenience.").

The CPS Defendants argue that, even if Plaintiffs intended to sue Herkimer County,

"they still have not alleged any formal policy, widespread practice, or failure to provide adequate

training to allege a claim under *Monell v. Department of Social Services*, 436 U.S. 658 (1978)."

(Dkt. No. 55-3, at 11). The Court agrees. Defendants correctly observe that "[o]nce again, the

only instances where the Herkimer County CPS is mentioned in the First Amended Complaint

are when it is alleged that the individual defendants are its employees." (*Id.*). And "as courts

throughout the Second Circuit routinely hold at the pleading stage, a single incident is not

enough to establish a custom, policy, or practice under circumstances like these." *Raymond v.

Brusino*, No. 23-cv-552, 2025 WL 470159, at *5, 2025 U.S. Dist. LEXIS 25451, at *14

(W.D.N.Y. Feb. 12, 2025) (collecting cases).

To the extent that Plaintiffs sought to bolster their *Monell* claim with additional

documents and affidavits, (*see* Dkt. Nos. 80, 81, 82, 83, 84, 85), these exhibits were filed after

the briefing on these motions was completed, and the Court will not consider them at this time.

Plaintiffs may seek leave to amend their Complaint as to Herkimer County in compliance with

this Court's instructions and the Local Rules. Therefore, Defendants' motion to dismiss all claims against Herkimer County at this time is granted.

### C.    Fourteenth Amendment Claims

The remaining CPS Defendant, Tarris, moves to dismiss Plaintiffs' Fourteenth Amendment substantive and procedural due process claims, arguing (1) J.B.'s alleged removal does not constitute a due process violation, and (2) D.L.H. was not removed on June 19, 2024. (Dkt. No. 55-3, at 4-8). Defendant Hensel "adopts and incorporates . . . all arguments made by co-defendants in their pending motion to dismiss, to the extent that said arguments also support dismissing the First Amended Complaint as against [Sergeant] Hensel." (Dkt. No. 62-2, at 3).

### 1.    Substantive Due Process Claims

Plaintiffs allege separate claims for violations of their substantive due process rights and their right to familial association, but the latter collapses into the former; "[t]he Fourteenth Amendment guarantees a substantive right under the Due Process Clause to intimate familial association[.] *Gorman v. Rensselaer Cnty.*, 910 F.3d 40, 47 (2d Cir. 2018). *See also Mulqueen v. Herkimer Cnty. Child Protective Servs.*, No. 22-cv-1301, 2023 WL 4931679, at *8, 2023 U.S. Dist. LEXIS 133719, at *21 (N.D.N.Y. Aug. 2, 2023) ("Where the intimate association right at issue is tied to familial relationships and is independent of First Amendment retaliation concerns . . . the Second Circuit has employed an analysis under the framework of the Fourteenth Amendment right to substantive due process." (quoting *Garten v. Hochman*, No. 08-cv-9425, 2010 WL 2465479, at *4, 2010 U.S. Dist. LEXIS 59699, at *11 (S.D.N.Y. June 16, 2010))). The substantive due process right to familial association "safeguard[s] persons against the government's exercise of power without any reasonable justification in the service of a

legitimate governmental objective." *Southerland v. City of New York*, 680 F.3d 127, 151 (2d Cir. 2012) (quotation marks and citation omitted).

"[W]hile a procedural due process claim challenges the procedure by which a removal is effected, a substantive due process claim challenges the 'fact of [the] removal itself.'" *Southerland*, 680 F.3d at 142 (quoting *Bruker v. City of N.Y.,* 92 F.Supp.2d 257, 266–67 (S.D.N.Y.2000)). "To state a claim for a violation of substantive due process, a plaintiff must allege (1) a valid liberty or property interest and (2) that defendants infringed on that interest in an arbitrary or irrational manner." *Sandoval v. Abbott House*, No. 24-cv-502, 2025 WL 1413640, at *2, 2025 U.S. Dist. LEXIS 93228, at *6 (S.D.N.Y. May 15, 2025) (quoting *20 Dogwood LLC v. Vill. of Roslyn Harbor*, 2024 WL 1597642, at *1, 2024 U.S. App. LEXIS 8832, at *2 (2d Cir. Apr. 12, 2024)). As to the first element, "[f]amily members have, in general terms, a substantive right under the Due Process Clause to remain together without the coercive interference of the awesome power of the state." *Cox v. Warwick Valley Cent. Sch. Dist.*, 654 F.3d 267, 275 (2d Cir. 2011) (quoting *Anthony v. City of New York*, 339 F.3d 129, 142 (2d Cir.2003). "The parent-child relationship, whether natural or formalized through adoption, properly forms the core of the constitutional notion of 'family.' The courts have extended procedural due process protection to this relationship." *Rivera v. Marcus*, 696 F.2d 1016, 1022 (2d Cir. 1982).

But there is "some disagreement" with respect to "what precisely constitutes a 'family' for purposes of due process." *Id.* The "constitutional conception of 'family' has evolved . . . to include relationships among members of what has commonly become known as the 'extended family.'" *Id. See also Moore v. City of East Cleveland*, 431 U.S. 494, 504-05 (1977) (extending constitutional protection to the relationship between grandmother and two grandsons and explaining that "[o]urs is by no means a tradition limited to respect for the bonds uniting the

members of the nuclear family. The tradition of uncles, aunts, cousins, and especially grandparents sharing a household along with parents and children has roots equally venerable and equally deserving of constitutional recognition."). Moreover, the Second Circuit recognizes certain "custodial relatives . . . are entitled to due process protections when the state decides to remove a dependent relative from the family environment." *Rivera*, 696 F.2d at 1024-25.[6]

But while parents "enjoy a constitutionally protected interest in their family integrity, this interest is counterbalanced by the 'compelling governmental interest in the protection of minor children, particularly in circumstances where the protection is considered necessary as against the parents themselves.'" *Wilkinson ex rel. Wilkinson v. Russell*, 182 F.3d 89, 104 (2d Cir. 1999) (quoting *Manzano v. South Dakota Dep't of Social Servs.*, 60 F.3d 505, 510 (8th Cir. 1995)). The government's interest, "though compelling, is not so compelling as to derogate a parent's constitutional rights completely. Case workers cannot be free to substantiate a claim of abuse, for instance, by ignoring overwhelming exculpatory information or by manufacturing false evidence." *Id.* "[S]hort of these obvious extremes . . . [a]n investigation passes constitutional muster provided simply that case workers have a 'reasonable basis' for their findings of abuse." *Id.*; *see also Cox*, 654 F.3d at 275 ("Only the most egregious official conduct can be said to be arbitrary in the constitutional sense and therefore unconstitutional." (quoting *Tenenbaum v. Williams*, 193 F.3d 581, 600 (2d Cir. 1999))).

To state a claim for a violation of substantive due process in this context, a plaintiff must demonstrate that the deprivation was "so shocking, arbitrary, and egregious that the Due Process

---

[6] *Compare id.* ("This action is quite different, however, from the typical foster removal case. None of the factors weighing against the finding of a liberty interest in favor of foster parents is present in this case. Mrs. Rivera is related biologically to the Ross children. They lived together as a family for several years *before* the foster care agreement was consummated.") *with Rees v. Off. of Child. & Youth*, 744 F. Supp. 2d 434, 452 (W.D. Pa. 2010), *aff'd*, 473 F. App'x 139 (3d Cir. 2012) (holding that grandmother had no constitutionally protected liberty interest in associating with her granddaughters where there was "no allegation of a significant emotional, financial, or custodial history" between them).

Clause would not countenance it even were it accompanied by full procedural protection."

*Tenenbaum*, 193 F.3d at 600; *see also McNeil v. HCDSS*, No. 18-cv-0631, 2018 WL 6173983, at

*6, 2018 U.S. Dist. LEXIS 140881, at *14 (N.D.N.Y. Aug. 17, 2018), *report and*

*recommendation adopted sub nom. McNeil v. Riente*, No. 18-cv-0631, 2018 WL 4895848, 2018

U.S. Dist. LEXIS 173174 (N.D.N.Y. Oct. 9, 2018). "Only the most egregious official conduct

can be said to be arbitrary in the constitutional sense and therefore unconstitutional."

*Tenenbaum*, 193 F.3d at 600 (quotation marks omitted). *See also Kenific v. Oswego Cty.*, No. 07-

cv-0213, 2010 WL 2977267, at *13, 2010 U.S. Dist. LEXIS 74252, at *45 (N.D.N.Y. July 23,

2010) (noting the "conscious-shocking requirement" means that, "when they acted, defendants

possessed a state of mind more blameworthy than carelessness or negligence").

      "Brief removals generally do not rise to the level of a substantive due process violation,

at least where the purpose of the removal is to keep the child safe during investigation and court

confirmation of the basis for removal." *Nicholson v. Scoppetta*, 344 F.3d 154, 172 (2d Cir.

2003). These "temporary deprivations do 'not result in the parents' wholesale relinquishment of

their right to rear their children,' so they are not constitutionally outrageous or conscience-

shocking." *McNeil*, 2018 WL 6173983, at *6, 2018 U.S. Dist. LEXIS 140881, at *14 (quoting

*Nicholson*, 344 F.3d at 172). "[T]he removal of children from their parent for the purpose of

keeping the children safe does not violate the parent's substantive due process rights if a post-

removal judicial proceeding is promptly held to confirm that there exists a reasonable basis for

the removal." *Southerland*, 680 F.3d at 153. "Once such 'court confirmation of the basis for

removal' is obtained, 'any liability for the continuation of the allegedly wrongful separation of

parent and child can no longer be attributed to the officer who removed the child." *Schweitzer v.*

*Crofton*, 935 F. Supp. 2d 527, 549 (E.D.N.Y. 2013) (quoting *Southerland*, 680 F.3d at 153), *aff'd*, 560 F. App'x 6 (2d Cir. 2014).

### a.    Removal of J.B. from Baye (Mother)

Defendants argue that Baye's conclusory allegation that Defendant Tarris "deprived" Baye of the "custody of," her minor child, "J.B. for just two days," fails to allege a substantive due process violation. (Dkt. No. 55-3, at 7).  All the cases cited by Defendants, in support of the proposition that a brief removal does not give rise to a substantive due process claim, involved a post-removal hearing. (*See* Dkt. No. 55-3, at 7 (citing *E.D. ex rel. V.D. v. Tuffarelli*, 692 F. Supp. 2d 347, 368 (S.D.N.Y. 2010) (finding no substantive due process violation where child was removed on a Friday evening and "judicial proceedings commenced in a timely manner on the following Monday"), *aff'd sub nom. E.D. ex rel. Demtchenko v. Tuffarelli*, 408 F. App'x 448 (2d Cir. 2011); *Green ex rel. T.C. v. Mattingly*, No. 07-cv-1790, 2010 WL 3824119, at *8, 2010 U.S. Dist. LEXIS 99864, at *25, 35 (E.D.N.Y. Sep. 23, 2010) (dismissing substantive due process where child was removed for four days and family court proceedings "were conducted on an expedited basis"); *Schweitzer*, 935 F. Supp. 2d at 549 (granting summary judgment on substantive due process claim where "undisputed evidence establishes that Defendants filed a neglect petition in family court three days after the removal of J.S. and a post-removal judicial hearing was held within six days, three business days, after removal"))). Defendants did not address how, or if, the lack of a post-removal judicial hearing affects the substantive due process analysis. While the brief two-day period of deprivation here is unlikely to result in a substantive due process violation. *Nicholson*, 344 F.3d at 172; *see also Schweitzer*, 935 F. Supp. 2d at 549, on this record and at this preliminary stage of the case, the Court declines to find that as a matter of law Plaintiffs have failed to state a claim.

### b.    Removal of D.L.H. from Baye (Grandmother)

Preliminarily, Defendants seek dismissal of Plaintiffs' substantive due process claims related to D.L.H.'s June 19, 2024, removal on the grounds that: (1) a "biologically related foster parent" has no liberty interest with respect to D.L.H.'s removal and (2) in any event, no Plaintiff had a liberty interest because at the time of the June 19, 2024 removal, D.L.H., although living with Baye, was in Herkimer County's "custody." (Dkt. No. 55-3, at 8).

Defendants' first argument appears to address biological relatives Baye (grandmother), with whom D.L.H. lived, and Sochia (aunt), D.L.H.'s legal guardian. Defendants assert that "[t]he state statutes and regulations governing the foster care system do not give [a plaintiff] a right to serve as a foster parent for his[/her] biological relative[,]" and "New York's foster care program [does] not create a liberty or property interest that entitles a biologically related foster parent to due process." (*Id.* (citing *Sykes v. New York State Office of Children & Family Servs.*, No. 18-cv-8309, 2019 WL 4688608, at *12, 2019 U.S. Dist. LEXIS 165554, *34 (S.D.N.Y. 2019))). But Defendants overstate *Sykes*' holding. In *Sykes*, the court considered whether a grandfather had a cognizable liberty or property interest in becoming his grandson's foster parent. *Sykes*, 2019 WL 4688608, at *10-12, 2019 U.S. Dist. LEXIS 165554, at *29-30. The grandfather had applied to become his grandson's foster parent, but he was denied because of his felony record. *Id.* The Court held that the grandfather did not have "an affirmative right" as "a biological relative to obtain the benefit of a state-created foster parent relationship." *Id.* at 2019 WL 4688608, at *12, 2019 U.S. Dist. LEXIS 165554, at *34. In so holding, however, the *Sykes* court specifically distinguished the grandfather's case from cases in which a foster parent relationship already existed:

> This is not a case about a family member's right to maintain a foster family with his biological kin free from state intervention. The state is not seeking to break up an existing

> kinship foster family unit. The question presented in this case is whether the Constitution directly creates a freestanding fundamental liberty interest that protects a biological relation's interest in creating a custodial foster relationship where one does not exist, and has not existed before[.]

*Id.* at 2019 WL 4688608, at *11, 2019 U.S. Dist. LEXIS 165554, at *31-32. In fact, the *Sykes* court indicated that "[g]iven the Supreme Court's recognition of the role in child-rearing of the 'broader family,' including 'grandparents or other relatives who occupy the same household,' the [c]ourt has little difficulty in concluding that [the plaintiff] would have a liberty interest that would entitle him to due process if [his grandchild] was living with him and the state wished to remove the child from his custody." *Id.* at 2019 WL 4688608, at *11, 2019 U.S. Dist. LEXIS 165554, at *31 (citing *Moore*, 431 U.S. at 505). This is not to say that every grandparent possesses a constitutionally protected liberty interest in associating with their grandchildren. *See, e.g., Rees*, 744 F. Supp. 2d at 452. But the Court cannot determine, at this stage of the litigation—particularly without further briefing—that no such liberty interest exists. *See Rivera*, 696 F.2d at 1024-25. Thus, the Court finds Defendants' first argument unavailing.

Defendants also ask the Court to dismiss all claims as to D.L.H., because "none of the three [P]laintiffs had custody over D.L.H. on June 19, 2024." (Dkt. No. 55-3, at 8). In support of this argument, Defendants rely on the Herkimer County Family Court on March 3, 2024, removing D.L.H. from her mother, Loce, based on issues of "drug abuse and domestic violence," and placing D.L.H. in "the temporary custody of the Commissioner of Social Services of Herkimer County to reside with" Baye (grandmother). (Dkt. No. 55-2, at 3–4). Defendants argue that because D.L.H. was apparently in the legal custody of the Herkimer County Department of Social Services, "none of the plaintiffs had substantive or procedural due process protections under the Constitution." (Dkt. No. 55-3, at 8). But Defendants do not supply any case law supporting their proposition, and this does not appear to be a straightforward inquiry. *See Haynes*

15

*v. Johnson*, 629 F. App'x 84, 86 (2d Cir. 2015) ("It is not clear whether *Rivera* established a categorical liberty interest for kinship foster parents or whether the liberty interest it found depended on the individual circumstances of the case.").

In addition, according to the First Amended Complaint, Plaintiffs allege that Baye is D.L.H.'s biological grandmother and her "former foster caregiver," and that D.L.H. was removed "from their family home[.]" (Dkt. No. 53, ¶¶ 7, 11). D.L.H. also "remained in foster care for over four months[,]" (Dkt. No. 55, ¶ 15), which is more than a "[b]rief removal," *see Nicholson*, 344 F.3d at 172, or a "temporary deprivation," *see McNeil*, 2018 WL 6173983, at *6, 2018 U.S. Dist. LEXIS 140881, at *14. The Court cannot say at this stage in the litigation that Baye has failed to state a claim. Therefore, the Court denies Defendants' motion to dismiss with respect to Baye's substantive due process claim for the removal of D.L.H.

### c.    Removal of D.L.H. from Sochia (Aunt)

Here again, Defendants ask the Court to dismiss Sochia's substantive due process claim as to D.L.H. because "none of the [P]laintiffs had custody over D.L.H. on June 19, 2024." (Dkt. No. 55-3, at 8). But Sochia was D.L.H.'s "legal guardian" and maternal aunt. (Dkt. No. 53, ¶¶ 5, 16). While D.L.H. did not live with Sochia, a family court order dated October 31, 2023 gave Sochia joint custody of D.L.H. with D.L.H.'s mother, Loce. (Dkt. No. 4-3, at 54).

While the documents before the Court indicate that D.L.H. was in the temporary custody of the Commissioner of Social Services of Herkimer County at the time of the removal at issue, (Dkt. No. 55-2, at 4-5), Defendants do not address the scope of Sochia's rights as biological aunt, "joint custodian," and "legal guardian" in their briefing. Thus, the Court cannot say as a matter of law that Sochia was not "entitled to due process protections" when D.L.H. was removed. *See Rivera*, 696 F.2d at 1025. *See also Burke v. Cnty. of Alameda*, 586 F.3d 725, 733 (9th Cir. 2009)

(noting extension of Fourteenth Amendment's protection of parental rights to "parents with legal custody, regardless of whether they also possess physical custody of their children"). Sochia was separated from D.L.H. for at least the four months D.L.H. was in foster care, (Dkt. No. 53, ¶ 15), which is not a "[b]rief removal," *see Nicholson*, 344 F.3d at 172. At this preliminary stage of the case, Defendants' motion to dismiss Sochia's substantive due process claim is denied.

### d.    Removal of D.L.H. from Loce (Mother)

With respect to Plaintiff Loce and her biological daughter, D.L.H., Defendants again argue that Loce has no claim because she did not have custody over D.L.H. on June 19, 2024. (Dkt. No. 55-3, at 8). "The parental-liberty interest that biological parents retain when their child is placed with foster parents is in preventing 'irretrievable' severance of the parent-child relationship," *Sandoval*, No. 24-cv-502, 2025 WL 1413640, at *3, 2025 U.S. Dist. LEXIS 93228, at *7 (S.D.N.Y. May 15, 2025) (quoting *Santosky v. Kramer*, 455 U.S. 745, 753 (1982)), as the 'right[ ] and ability to make day-to-day decisions about [the child's] care' has 'already been circumscribed by the State," *id.* (quoting *Castro v. Windham*, 2017 WL 4676644, at *5, 2017 U.S. Dist. LEXIS 153376, at *12 (S.D.N.Y. Sept. 19, 2017)). As such, "most circuit courts and courts in the Second Circuit [decline] to recognize a parent's § 1983 claim when the alleged state action was not specifically directed at the parent-child relationship, but rather involved the day-to-day care and welfare of the children." *Sandoval*, 2025 WL 1413640, at *3, 2025 U.S. Dist. LEXIS 93228, at *8.

Here, Loce lost custody of D.L.H. by court order on March 3, 2024 in Herkimer County Family Court. (Dkt. No. 55-2, at 2). Plaintiffs do not suggest that D.L.H. resided with Loce, nor do they dispute that D.L.H. was previously removed from Loce's custody and placed with Baye. Plaintiffs do not allege any facts indicating that Defendants' actions affected any rights Loce had

not already lost—indeed, Plaintiffs have alleged no facts at all about the relationship between

D.L.H. and Loce. As such, there are no facts from which the Court can infer that D.L.H.'s

change in placement interfered with, or was specifically directed at, the parent-child relationship.

*See Sandoval*, 2025 WL 1413640, at *3, 2025 U.S. Dist. LEXIS 93228, at *7. Therefore,

Defendants' motion to dismiss is granted with respect to Loce's substantive due process claims.

### 2.    Procedural Due Process Claims

To establish a procedural due process claim, a plaintiff must prove "(1) a 'protected

property or liberty interest,' (2) defendants' denial of that interest, and (3) evidence that the

denial was effected 'without due process.'" *Schweitzer*, 935 F. Supp. 2d at 545 (citing *Palacio v.

Pagan,* 345 F. App'x 668, 669 (2d Cir. 2009)). As noted above, parents and certain custodial

family members "have a constitutionally protected liberty interest in the care, custody and

management of their children," but "the State has a profound interest in the welfare of the child,

particularly his or her being sheltered from abuse." *See Tenenbaum*, 193 F.3d at 593-94. To that

end, "the relationship between parent and child may be investigated and terminated by the state

provided constitutionally adequate procedures are followed." *McNeil*, 2018 WL 6173983, at *5,

2018 U.S. Dist. LEXIS 140881, at *11 (citing *Santosky*, 455 U.S. at 766).

"As a general rule, . . .  before parents may be deprived of the care, custody or

management of their children without their consent, due process—ordinarily a court proceeding

resulting in an order permitting removal—must be accorded to them." *Tenenbaum*, 193 F.3d at

593. But, in "'emergency' circumstances,' a child may be taken into custody by a responsible

State official without court authorization or parental consent." *Id.* at 594 (internal citations

omitted). "Emergency circumstances mean circumstances in which the child is immediately

threatened with harm." *Id.* (quoting *Hurlman v. Rice*, 927 F.2d 74, 80 (2d Cir. 1991)). "While

'there is a sufficient emergency to warrant officials' taking [a child into] custody without a prior

hearing if [they are] immediately threatened with harm,' the converse is also true. If the danger

to the child is not so imminent that there is reasonably sufficient time to seek prior judicial

authorization, *ex parte* or otherwise, for the child's removal, then the circumstances are not

emergent; there is no reason to excuse the absence of the judiciary's participation in depriving

the parents of the care, custody and management of their child." *Id.* (quoting *Robison v. Via*, 821

F.2d 913, 922 (2d Cir. 1987)).

### a.    Removal of J.B. from Baye (Grandmother)

Defendants indicate that the allegations in the First Amended Complaint are "insufficient

to plausibly allege a procedural [ ] due process claim[.]" (Dkt. No. 55-3, at 7). Defendants also

argue that, because J.B.'s removal was so brief, "there is no constitutional violation." (*Id.*).

Defendants correctly note that the Court does not have to credit a cursory allegation, like

the Plaintiffs' allegation here, that there were no exigent circumstances. (*See* Dkt. No. 55-3, at 6-

7 (citing *Winkler v. Grant*, 370 F. App'x 145, 147 (2d Cir. 2010) ("Winkler's complaint failed to

state a plausible claim for relief, in that it contained only a conclusory allegation that exigent

circumstances were not present when the child was removed, which the district court was not

obligated to credit."); *Booker v. Dept of Soc. Servs.*, No. 23-cv-04888, 2024 WL 3904822, at *4,

2024 U.S. Dist. LEXIS 150605, at *9 (E.D.N.Y. Aug. 22, 2024) (dismissing procedural due

process claim based on allegations that "there was 'no real evidence' and that the CPS case was

'unfounded'"). But giving deference to the Plaintiffs' pro se status, and in light of court

documents previously in the record related to the removal, (*see* Dkt. No. 4-3, at 19), the Court

declines to find at this stage that the Plaintiffs' allegations are legally insufficient. *See Hagans v.*

*Nassau Cnty. Dep't of Soc. Servs.*, No. 18-cv-1917, 2020 WL 1550577, at *6, 2020 U.S. Dist.

LEXIS 58111, at *14 (E.D.N.Y. Mar. 31, 2020) (finding the plaintiff's allegation that the defendant "had no 'factual basis to believe there was imminent danger' and instead acted on personal motives" sufficient to survive motion to dismiss); *Sulaymu-Bey v. City of New York*, No. 17-cv-3563, 2019 WL 1434597, at *5, 2019 U.S. Dist. LEXIS 54492, at *12 (E.D.N.Y. Mar. 29, 2019) ("The plaintiffs state a procedural due process claim with respect to ACS's removal of their children. It is undisputed that the children were removed without prior court authorization or parental consent. At this stage in the proceeding, the plaintiffs' allegation—that there was no emergency that warranted the children's removal without a court order—is sufficient.").

The Court rejects Defendants' argument that there was no procedural due process violation because J.B.'s removal was so brief. While "[b]rief removals generally do not rise to the level of a *substantive* due process violation[,]" *see Nicholson*, 344 F.3d at 172 (emphasis added), the brevity of the removal is not determinative when assessing whether a plaintiff's *procedural* due process rights were violated, *see, e.g., Tenenbaum*, 193 F.3d at 595, 601 (emphasis added) (holding that hours-long temporary "interference was not severe enough to constitute a violation of [plaintiffs'] substantive due-process rights" but that "a properly instructed jury could conclude that at the time the caseworkers decided to remove Sarah, there was reasonably sufficient time, entirely consistent with Sarah's safety, to seek a court order[,]" and "that use of emergency, extra-judicial procedures was an infringement of the Tenenbaums' and Sarah's procedural due-process rights"). Therefore, the Court will not dismiss Baye's procedural due process claim at this early stage of the litigation.

### b. Removal of D.L.H. from Baye (Grandmother)

Defendants argue that "there is no authority for the proposition that [ ] a non-custodial parent ha[s] a clearly established right to a pre-termination hearing before suspension of

whatever visitation rights she may have." (Dkt. No. 55-3, at 8 (quoting *Dabah v. Franklin*, No. 19-cv-10579, 2022 WL 973834, at *5, 2022 U.S. Dist. LEXIS 60884, at *13 (S.D.N.Y. Mar. 31, 2022), *aff'd*, No. 22-845-cv, 2023 WL 3577872, 2023 U.S. App. LEXIS 12468, 2023 U.S. App. LEXIS 12468 (2d Cir. May 22, 2023)). *C.f. Uwadiegwu v. Dep't of Soc. Servs. of the Cnty. of Suffolk*, 639 F. App'x 13, 15 (2d Cir. 2016) (finding father was not entitled to a pre-termination hearing before suspension of monitored visits with children, over whom he had lost custody). But both *Dabah* and *Uwadiegwu* involved a parent with neither legal nor physical custody, and D.L.H. was living in Baye's home at the time of her removal. (*See* Dkt. No. 53, ¶ 11). Further, Baye does not allege that her visitation rights were violated; Baye alleges that D.L.H. was removed "from [her] family home[.]" (*Id.*). Accordingly, the Court declines to dismiss Baye's procedural due process claim with respect to D.L.H.

### c.    Removal of D.L.H. from Sochia (Aunt)

Defendants' arguments for dismissal are the same with respect to Sochia's procedural process claims as with Baye's. But again, as distinct from *Dabah*, 2022 WL 973834, at *5, 2022 U.S. Dist. LEXIS 60884, at *13, Sochia is (or was) D.L.H.'s legal guardian, (Dkt. No. 53, ¶ 5). Sochia shared joint custody of D.L.H. with Loce, and it is not clear when Sochia lost joint custody. *See* discussion *infra* Section III.C.1.c. Thus, having declined to dismiss the procedural due process claim with respect to the removal of D.L.H. from Baye, the Court declines to dismiss the claim by Sochia.

### d.    Removal of D.L.H. from Loce (Mother)

As noted above, D.L.H. had already been removed from Loce's custody and placed in the temporary custody of the Commissioner of Social Services of Herkimer County several months before her removal from Baye's home on June 19, 2024. (Dkt. No. 55-2, at 1-5). Finally, Loce

has not alleged facts supporting an inference that D.L.H.'s removal was "specifically directed at the parent-child relationship." *See Sandoval*, 2025 WL 1413640, at *3, 2025 U.S. Dist. LEXIS 93228, at *7. For these reasons, Loce has failed to state a procedural due process claim against the CPS Defendants.

### D.    Sergeant Hensel

Plaintiffs allege that Sergeant Hensel violated their Fourteenth Amendment rights when he "knowingly failed to enforce a valid family court order restoring custody of D.L.H. to Jordan Sochia," "allowing CPS to continue holding DLH in foster care," prolonging the harm caused by the unconstitutional actions of CPS." (Dkt. No. 53, ¶ 28). Defendant Hensel moves for dismissal, arguing that Plaintiffs have not plausibly alleged a cause of action against him because an officer "does not owe a constitutional duty to members of the public to enforce court orders." (Dkt. No. 62-2, at 11).[7] Plaintiffs disagree, arguing that Hensel "knowingly relied on false information provided by CPS and failed to investigate the legitimacy of the custody order." (Dkt. No. 66, at 4).

Plaintiffs do not allege that Hensel was involved in the removal of D.L.H. or J.B. Plaintiffs' sole allegation against Hensel is that he did not enforce "a court order that restored joint custody of D.L.H. to her legal guardian." (Dkt. No. 53, ¶ 16). Plaintiffs are presumably referring to the October 31, 2023 order granting joint custody of D.L.H. to Sochia and Loce, with the child's primary residence to be with her mother, Loce. (Dkt. No. 4-3, at 54-55).[8] That order

---

[7] Defendant Hensel also argues that Plaintiff Baye has no standing to assert claims against him, and that Plaintiffs have not plausibly alleged a claim for punitive damages. (Dkt. No. 62-2). Because the Court finds that Plaintiffs have not plausible alleged a claim against Defendant Hensel under section 1983, the Court does not address these arguments.

[8] Plaintiffs refer to a Court Order "restoring custody" to Sochia, but the record does not reflect any order other than the October 31, 2023 joint custody order, and the Plaintiffs repeatedly refer to that order as the basis of their claim. *See* Dkt. No. 53, ¶ 16 (alleging that Marissa Tarris told Hensel that Sochia "use to have joint custody with her sister Savanah Loce when in fact the custody order was standing and current"); Dkt. No. 61, at 2 (citing "custody documentation showing Jordan Sochia's joint custody of D.L.H." in support of motion to amend to add an additional

gave Sochia the right to visitation on dates, times and conditions agreed upon by Loce. (*Id.*).

However, in a subsequent order issued on March 3, 2024, the family court determined that

temporary removal from Loce was warranted, and the court placed D.L.H in the temporary

custody of HCDSS. (Dkt. No. 55-2, at 4). And a June 21, 2024 Order to Show Cause directed

that D.L.H. was no longer to reside with Baye because "removal is necessary to avoid imminent

danger to the child." (*Id.* at 6). In light of the family court orders placing D.L.H. in the temporary

custody of HCDSS and directing that she reside with a different foster parent, Plaintiffs have

failed to plausibly allege that there was a court order that a law enforcement officer could have

enforced to prevent CPS from continuing to hold D.L.H in foster care.[9]

The Court therefore grants Defendant Hensel's motion to dismiss all claims against him.

## IV.    MOTION FOR LEAVE TO AMEND

Plaintiffs move for leave to file a Second Amended Complaint pursuant to Fed. R. Civ. P.

15(a)(2). (Dkt. No. 61, at 1). Plaintiffs have not filed a proposed Second Amended Complaint as

required by Local Rule 15.1(a). Moreover, Plaintiffs' amendment would be futile. Plaintiffs

move to add Captain Brewer "and to include factual allegations regarding his direct involvement

in the events that gave rise to this action[,]" (Dkt. No. 61, at 1). But Plaintiffs accuse the officer

of the same claim they have asserted against Sergeant Hensel; Plaintiffs assert that Captain

Brewer, along with Sergeant Hensel, "was present during the removal," "was fully aware of

law enforcement officer defendant); Dkt. No. 61-1, at 2 (arguing that Hensel was aware of the October 31, 2023 joint custody order).
[9] In any event, Plaintiffs have not plausibly identified a constitutional right that Hensel violated. *See Buari v. City of New York*, 530 F. Supp. 3d 356, 391 (S.D.N.Y. 2021) (collecting cases) ("[T]here is no constitutional right to an adequate investigation, and therefore a claim for failure to investigate is not independently cognizable under Section 1983[.]"); *Schweitzer v. Brunstein*, No. 16-cv-1172, 2016 WL 4203482, at *2, 2016 U.S. Dist. LEXIS 104838, at *3 (E.D.N.Y. Aug. 9, 2016) ("A police officer's failure to pursue a particular investigative path is not a constitutional violation."). *C.f. Town of Castle Rock, Colorado v. Gonzales*, 545 U.S. 748, 768 (2005) (holding that wife "did not, for purposes of the Due Process Clause, have a property interest in police enforcement of the restraining order against her husband").

custody documentation showing Jordan Sochia's joint custody of D.L.H.," but "failed to intervene or enforce valid custody orders[.]" (*Id.* at 2). Because such an amendment would be futile, the Court denies Plaintiffs' motion to amend the Complaint to add Captain Brewer. *See MSP Recovery Claims, Series LLC v. Hereford Ins. Co.*, 66 F.4th 77, 90 (2d Cir. 2023) (noting that a court may, in its discretion, deny leave to amend "for good reason, including futility").

Plaintiffs have also subsequently filed documents "in support of the Third Amended Complaint." (*See, e.g.,* Dkt. No. 83, at 13). These documents appear to relate to a potential *Monell* claim against Herkimer County. (*Id.*). However, Plaintiffs have not moved to file a third amended complaint, nor have they filed a proposed complaint as required by Local Rule 15.1(a). If Plaintiffs wish to file a Second Amended Complaint, they must make a motion for leave to amend in compliance with this Court's Local Rules. Plaintiffs are once again advised that any such Second Amended Complaint will replace the existing complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." (internal quotation marks omitted)). Mindful of the many documents Plaintiffs have filed in an apparent attempt to substantiate their *Monell* claims, (*see, e.g.,* Dkt. No. 83), the Court reminds Plaintiffs that any exhibits Plaintiffs wish the Court to consider going forward **must be attached to any proposed Second Amended Complaint**. This means that their previous complaints and other filings will no longer be the operative documents containing their pleadings and exhibits—everything that is essential must be contained in or attached to the proposed Second Amended Complaint.

## V.    CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendant Sergeant Hensel's motion to dismiss (Dkt. No. 62) is **GRANTED** in its entirety; and it is further

**ORDERED** that Defendants' motion to dismiss (Dkt. No. 55) is **GRANTED** as to all claims against Herkimer County, Herkimer County Child Protective Services, Defendant Williamson, and Defendant Coddington, and all claims against these Defendants are **DISMISSED**; and it is further

**ORDERED** that Defendants' motion to dismiss (Dkt. No. 55) is **GRANTED** as to Plaintiff Loce's Fourteenth Amendment substantive and procedural due process claims and these claims are **DISMISSED** as to Plaintiff Loce; and it is further

**ORDERED** that Defendants' motion to dismiss (Dkt. No. 55) is otherwise **DENIED**; and it is further

**ORDERED** that Plaintiffs' "Motion for Leave to File a Second Amended Complaint" (Dkt. No. 61) is **DENIED**; and it is further

**ORDERED** that any motion to amend the complaint must be filed within thirty (30) days of the date of this Order; and it is further

**ORDERED** that if Plaintiffs do not file a motion to file an amended complaint within thirty (30) days, Defendant is directed to file an answer to the First Amended Complaint in accordance with the Federal Rules of Civil Procedure.

**IT IS SO ORDERED.**

Dated: <u>July 1, 2025</u>
      Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge

25